JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY NELSON,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CORT BUSINESS SERVICES CORPORATION; and DOES 1–20,<br><br>　　　　　　Defendants. | Case No. 2:20-cv-04014-AB-MAA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND (DKT. NO. 28)** |

**I.    INTRODUCTION**

Before the Court is Plaintiff Henry Nelson's ("Plaintiff") motion for remand. (Dkt. No. 28.) Defendant CORT Business Services Corporation ("Defendant") filed an opposition[1] to Plaintiff's motion for remand, and Plaintiff filed a reply in support of

---

[1] Defendant's opposition fails to comply with the Court's Standing Order in numerous respects, including by failing to include Times New Roman font of no less than 14 point or Courier font of no less than 12 point and by failing to provide Westlaw citations for unreported cases. (*See* Dkt. No. 13 at 4–5.) "Although the Court will consider this [opposition] despite the inability or unwillingness of [Defendant's] counsel to follow the Local Rules and this Court's Standing Order, counsel is warned that [future] failure to follow the Court's rules will result in sanctions." *See Stephens v. Nordstrom, Inc.*, CV 17-5872 DSF (KSx), 2018 WL 7143623, at *1 (C.D. Cal. Dec. 26, 2018) (emphasis in original).

1.

his motion for remand. (Dkt. Nos. 35, 37.) The Court found this matter suitable for decision without oral argument and took Plaintiff's motion under submission. (Dkt. No. 40.) For the reasons stated below, the Court **GRANTS** Plaintiff's motion for remand.

## II.    BACKGROUND

This case concerns a putative class action against Defendant and Does 1–20 ("Defendants"), who Plaintiff alleges "have engaged in a systematic pattern of wage and hour violations under the California Labor Code and Industrial Welfare Commission ('IWC') Wage Orders." (Dkt. No. 1-1 ¶ 3.)

Plaintiff filed his initial complaint in the Superior Court of the State of California, County of Los Angeles, on March 25, 2020. (Dkt. No. 1-1.) Plaintiff's initial complaint alleged seven causes of action against Defendants: (1) failure to pay minimum wages in violation of California Labor Code §§ 1182.12, 1194, 1194.2, and 1197, and in violation of the IWC Wage Orders; (2) failure to pay overtime in violation of California Labor Code §§ 510, 1194, and 1198, and in violation of the IWC Wage Orders; (3) failure to provide meal periods in violation of California Labor Code §§ 226.7 and 512, and in violation of the IWC Wage Orders; (4) failure to permit rest breaks in violation of California Labor Code § 226.6 and the IWC Wage Orders; (5) failure to provide accurate itemized wage statements in violation of California Labor Code § 226 and the IWC Wage Orders; (6) failure to pay all wages due upon separation of employment in violation of California Labor Code §§ 201, 202, 203 and in violation of the IWC Wage Orders; and (7) violation of California Business & Professions Code §§ 17200, *et seq*. (*Id.* ¶¶ 37–94.)

Plaintiff seeks to bring his claims on behalf of the following putative class: "All California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California within four years prior to the filing of this action to the date the class is certified." (*Id.* ¶ 20.) Plaintiff also seeks to bring claims on

behalf of the following putative subclass: "All Class Members who separated their employment with Defendants at any time within three years prior to the filing of this action to the date the class is certified." (*Id.* ¶ 21.)

On April 29, 2020, Defendant removed Plaintiff's suit to this Court. (Dkt. No. 1.) In its Notice of Removal, Defendant contended that (1) there are at least 420 class members in Plaintiff's putative class action; (2) the amount in controversy exceeds $5,000,000; and (3) diversity of citizenship exists between Plaintiff and Defendant. (*Id.* at 1.) Plaintiff now moves to remand this action to California state court on the ground that the amount in controversy does not exceed $5,000,000. (Dkt. No. 28.)

### III. LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987). Under Section 1332(d), added by the Class Action Fairness Act ("CAFA"), district courts have "'original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs, and is a class action in which' the parties satisfy, among other requirements, minimal diversity." *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 680 (9th Cir. 2006) (quoting 28 U.S.C. § 1332(d)). "[U]nder CAFA, the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Id.* at 685. With respect to amount in controversy, a "plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). When a defendant seeks removal based on the amount in controversy, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* Where, as here, the plaintiff contests the defendant's amount-in-

3.

controversy allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. Similarly, "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Arias v. Residence Inn by Marriot*, 936 F.3d 920, 922 (9th Cir. 2019).

## IV.  DISCUSSION

Plaintiff argues that this action should be remanded to the Superior Court of the State of California, County of Los Angeles because Defendant has not met its burden of proving the requisite amount in controversy by a preponderance of the evidence. The Court agrees.

### A. Defendant does not establish by a preponderance of the evidence that the amount in controversy exceeds $5,000,000

In this case, while neither Plaintiff's initial complaint nor his First Amended Complaint states an aggregate amount in controversy, Defendant argues in its Notice of Removal that the combined claims of all class members exceeds $5,000,000. (Dkt. No. 1.) Plaintiff challenges Defendant's amount-in-controversy calculations, arguing that Defendant's calculations rest on unreasonable assumptions and include penalties under California Labor Code § 1197.1, which Plaintiff does not seek. (Dkt. Nos. 28, 35.)

In opposing remand, Defendant relies on a declaration from Jeffrey Seidman, Defendant's Corporate Vice President of Human Resources, to try to meet its burden of demonstrating the amount in controversy by a preponderance of the evidence. (*See* Dkt. No. 37, Ex. A. ("Seidman Decl.")). Through this declaration, Defendant arrives at an amount in controversy of $7,327,038, (Dkt. No. 37 at 7), calculated as follows:

//

//

4.

| Claim | Defendant's Estimated Amount in Controversy |
|---|---|
| Missed Meal Periods | **$531,320** – Assuming a 20% violation rate (i.e. one violation out of every five shifts for alleged meal period violations) broken down as follows:<br>• $17.03 (average rate of pay in 2016) x 118 employees in 2016 x 52 workweeks = $104,496<br>• $17.93 (average rate of pay in 2017) x 125 employees in 2017 x 52 workweeks = $116,545<br>• $18.87 (average rate of pay in 2018) x 147 employees in 2018 x 52 workweeks = $144,242<br>• $19.71 (average rate of pay in 2019) x 162 employees in 2019 x 52 workweeks = $166,037 |
| Missed Rest Periods | **$531,320** – Assuming a 20% violation rate (i.e. one violation out of every five shifts for alleged rest period violations) broken down as follows:<br>• $17.03 (average rate of pay in 2016) x 118 employees in 2016 x 52 workweeks = $104,496<br>• $17.93 (average rate of pay in 2017) x 125 employees in 2017 x 52 workweeks = $116,545 |

5.

|  | |
|---|---|
|  | - $18.87 (average rate of pay in 2018) x 147 employees in 2018 x 52 workweeks = $144,242<br>- $19.71 (average rate of pay in 2019) x 162 employees in 2019 x 52 workweeks = $166,037 |
| Inaccurate Wage Statement Penalties | **$648,000** – Assuming a 100% violation rate (i.e. that every single wage statement was unlawful) broken down as follows:<br>- $4,000[2] x 162 hourly employees in 2019 |
| Waiting Time Penalties | **$963,665** broken down as follows:<br>- $17.93 per hour x 9 hours per day x 30 days x 57 former employees in 2017 = $275,942.70<br>- $18.87 per hour x 9 hours per day x 30 days x 65 former employees in 2018 = $331,168.50<br>- $19.71 per hour x 9 hours per day x 30 days x 67 former employees in 2019 = $356,553.90 |
| Unpaid Minimum Wages | **$308,646** (the amount in controversy for one alleged 30 minute deduction without pay) broken down as follows: |

---

[2] Pursuant to California Labor Code § 226(e), an employee who is injured as a result of the employer's knowing and intentional failure to provide itemized wage statements is entitled to recover the greater of his or her actual damages, or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), in addition to costs and attorney fees. *See* Cal. Labor Code § 226(e).

6.

| | |
|---|---|
| | - $9 per hour/2 x 52 x 118 employees in 2016 = $27,612<br>- $10.50 per hour/2 x 52 x 125 employees in 2017 = $34,125<br>- $11 per hour/2 x 52 x 147 employees in 2018 = $42,042<br>- $12 per hour/2 x 52 x 162 employees in 2019 = $50,544<br>  - $27,612 + $34,125 + $42,042 + $50,544 = $154,323<br>- Liquidated Damages = an additional $154,323 |
| Unpaid Minimum Wages (Additional Section 1197.1 penalties) | **$2,081,700** broken down as follows<br>- $16,200:<br>  - 162 putative class members in 2019 x $100 (penalty for the initial violation)<br>- $2,065,500:<br>  - 162 putative class members in 2019 x $250 (penalty for subsequent violations) x 51 workweeks |
| Unpaid Overtime Wages | **$796,980** broken down as follows:<br>- $17.03 x 1.5 per hour x 52 x 118 employees in 2016 = $156,744<br>- $17.93 x 1.5 per hour x 52 x 125 employees in 2017 = $174,817<br>- $18.87 x 1.5 per hour x 52 x 147 employees in 2018 = $216,363 |

7.


|  | • $19.71 x 1.5 per hour x 52 x 162 employees in 2019 = $249,055 |
|---|---|
| **Total Before Attorneys' Fees:** | **$5,861,631** (total of all rows above) |
| Attorneys' Fees | **$1,465,407** broken down as follows: <br> • $5,861,631 x 25% |
| **Total After Attorneys' Fees:** | **$7,327,038** <br> • $5,861,631 + $1,465,407 |

(*See* Dkt. No. 37 at 7–17) (citing Seidman Decl.).

Despite the thorough calculations provided by Defendant, Plaintiff correctly states that Defendant included initial and subsequent penalties under Section 1197.1, which Plaintiff does not seek in either his original complaint or First Amended Complaint. Courts in this district have recognized that "section 1197.1 penalties can properly be included in the amount in controversy calculation to establish CAFA jurisdiction if [pleaded] in the operative complaint." S*ee Zepeda v. Mastec Network Solutions, LLC*, No. 18-cv-00749-VAP (SHKx), 2018 WL 3222749, at \*6 (C.D. Cal. June 29, 2018); *see also Hernandez v. Towne Park, Ltd.*, No. CV 12-02972 MMM (JCGx), 2012 WL 2373372, at \*10 (C.D. Cal. June 22, 2012) ("Consequently, the court can, in calculating the amount in controversy, validly include potential penalties for a four-year period because that is the relief sought in the complaint."); *see also Franke v. Anderson Merchandisers LLC*, No. CV 17-3241 DSF (AFMx), 2017 WL 3224656, at \*4–\*5 (C.D. Cal. July 28, 2017) (including section 1197.1 penalties in calculating the amount in controversy where plaintiff sought such penalties in the operative complaint). Because Plaintiff does not seek section 1197.1 penalties on behalf of the putative class or sub-class, Defendant errs in including these penalties in calculating the amount in controversy.

Because Plaintiff does not seek section 1197.1 penalties in this action,

Defendant's calculations with respect to such penalties must be disregarded. Without the additional $2,081,700 in penalties, the total amount in controversy before attorneys' fees decreases to $3,779,931 ($5,861,631 - $2,081,700). Reasonable attorneys' fees of 25%[3]—calculated using the new reduced total of $3,779,931—equals $944,982.75. Adding the adjusted attorneys' fees to the reduced total yields an amount in controversy of $4,724,913.75. Accordingly, Defendant fails to show by a preponderance of the evidence that the amount in controversy in this case meets or exceeds the jurisdictional threshold of $5,000,000.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for remand. This case is hereby **REMANDED** to the state court from which it was removed.

**IT IS SO ORDERED.**

Dated: August 7, 2020         _____
                              HONORABLE ANDRÉ BIROTTE JR.
                              UNITED STATES DISTRICT COURT JUDGE

---

[3] In the CAFA context, "the Ninth Circuit has established that 25% of the common fund is a fair estimate of attorneys' fees." *Tompkins v. Basic Research LL*, No. CIV. S-08-244 LKK/DAD, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008) (citing *Staton v. Bowing Co.,* 327 F.3d 938, 969 (9th Cir. 2003)).  Accordingly, several courts in this Circuit, including this Court, have found that 25% attorneys' fees could be reasonable in CAFA wage and hour cases.  *See, e.g., Hamilton v. Wal-Mart Stores, Inc.*, Case No. ED CV 17–01415–AB (KKx), 2017 WL 4355903, at *5–6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case allowing an estimated attorneys' fee award of 25% of plaintiff's damages in calculating the amount in controversy); *Sanchez v. Russel Sigler Inc.*, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (CAFA action finding that "the benchmark for attorneys' fees is 25% of the amount in controversy."); *Gutierrez v. Stericycle, Inc.*, Case No. LA CV15-08187 JAK (JEMx), 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

9.